Good afternoon everybody. So we'll call our first case is the United States v. Donna Fecondo. It's 241618. Mr. Donahue, how are you, sir? Good morning, Your Honors. May it please the Court, Keith Donahue for Appellant Donna Fecondo. I'd like to reserve three minutes of time for my rebuttal. Sure. Your Honors, this case turns on the text of the guideline for failing to pay over failing to collect and pay over employment taxes in violation of the Internal Revenue Code. And the guideline directs the Court to select the level in the tax table that corresponds to the amount of tax not, quote-unquote, collected and paid over. Here, the District Court nonetheless included $1.8 million in employer-side FICA taxes, which is a kind of tax that is never error by virtue of the perfect clarity of 2T1.6, the guideline that applies. So I don't want to rock the boat here with respect to your framing, but I totally understand that there's this, you know, issue between 2T1.6 and 2T1.1 and that you think that we're looking at the plain text of 2T1.6. And I think that seems to be right. But what do you think about the general guidance on relevant conduct in 1B1.3? And why isn't this kind of unpaid portion of the FICA tax not just kind of lumped in as other relevant conduct that gets lumped in in any number of other cases? As I'm sure you know, sometimes it's not the charged and pleaded guilty one. It's what happens in that back end with the expansion of the other relevant conduct. So why doesn't that just do the work that it does in so many other cases? Well, your Honor's right. I mean, the course of conduct multiplier in particular of the relevant conduct guideline always ramps up punishment. It ramped up punishment. It has application in her case, but it has application in applying 2T1.6. So to take the big picture, the relevant conduct guideline does sometimes require considering facts beyond the defense of conviction. That's the essence of the relevant conduct rule. But it's still the specific guideline that tells us what features of the defendant's conduct or what kinds of harm that conduct may have caused are relevant. So I'm just trying to see if I trace you and I'm going to do it by maybe completing the thought for you and tell me if it's wrong. Is what you're saying because we've got 2T1.6 coupled with the table at 2T4.1 that we're only looking at the magic words or the focused words at 2T1.6 of collected, accounted for, and paid. And that defines the universe of relevant conduct. And if it's not one of those, then it's not that. I think there's a dichotomy there where I think that the correct answer is actually neither. Oh, yeah. Yeah. So the text of 2T1.6 are the magic words. That's, of course, where we start. I'm sure the Court agrees with that. And as you know, the government doesn't even dispute the meaning of that text. Now, turning to the relevant conduct rule, it added $2.7 million to the loss amount that we concede was properly included here. And that's because the indictment charged simply a failure to collect and pay over employment taxes for 2015 to 2016. But then when we got to sentencing, the relevant conduct rule meant we looked to employment taxes for the whole span of the period 2009 to 2019. So if it hadn't been for the relevant conduct rule, the tax loss as charged in the indictment would have been $600,000. But because the relevant conduct rule expanded the universe to all tax not collected and paid in the same course of conduct, it became $3.3 million. So how do you reconcile your position with 3D1.2 that clearly identifies 2T1.6 as relevant conduct in the grouping world? Right. Well, we agree that those offenses group. So it's the offense that yields the highest offense level that controls. Here, because the only loss was on the employment tax counts, it's 2T1.6 that controls. So it's really the grouping that the government has sort of a secondary argument where it proposes an alternative construction of the grouping rule. We agree it all groups. So once you group... If it groups though, then wouldn't it... If you follow what 3D1.2 tells us to do, right? If you go to 3D1.2D, it talks, offenses covered by the following guidelines are to be grouped and includes 2T1.6, which would suggest that relevant conduct comes in. Right. Well, we are grouping the 2T1.6 counts and we're including relevant conduct. So there were two counts of failure to collect and pay over taxes. Those group. The counts themselves just charged $600,000. That would have been an offense level corresponding to 27 to 33 months for misdemeanor. But then we applied the relevant conduct rule. So instead of just taking the counts charged in the indictment, we looked to all taxes not collected over the same course of conduct. So just to make sure I'm following, is basically what you're saying, we're going to group everything under 2T1.6, but we're not going to group anything under 2T1.1, the tax loss. Is that where you're at? No, we're grouping both. There's an intermediate step there. So when counts do group, right, we have to look at which count carries the highest offense level. And that becomes the offense level for the group. So here the offense level for 2T1.6 rests on a loss of $3.3 million. And the offense level for 2T1.1 would actually comprise the employer side taxes. And that would be $1.8 million. So the 2T1.6 group is what controls because it's larger. It yields the higher offense level. Stepping apart from the guidelines for a second, do you agree that based on the conduct to which your client pled guilty that there was statutory authority to impose the sentence that was given within the statutory range? Yes. So can you just give me a summary, your best argument for why there needs to be reversal based on the guidelines reasoning here, as opposed to just relying on the initial statutory authority that the judge would have had? Well, I think it's pretty clear under the Supreme Court's precedence in Molina-Martinez from 2016 and Rosales-Mireles from 2018 that a plain guidelines calculation error typically requires a sentence be vacated. So notwithstanding the general significance of the statutory range and it really being the bottom line, this type of error has been recognized to typically warrant correction even when not preserved, provided it's plain. But what if the judge just decided not to look at the guidelines at all, seeing them as discretionary? Well, that would be reversible error as well under Galvey United States, which says that in the post-Booker sentencing world, the first step is always going to be to calculate the guidelines range before turning to how that range should factor in the exercise of discretion alongside many other considerations that might inform the selection of an appropriate sentence. So I mean, I don't know, of course, after Booker, right, we have a guidelines range that does not carry the significance it once did. But nonetheless, the precedence after Booker have held that this sort of error under the advisory guidelines regime is reversible error if it's preserved and is typically plain error. Sorry, not typically plain error, but if it is plain, typically warrants reversal as well. And so, you know, plain is, I mean, I think the nub, if we want to begin to look at the four prongs of plain error review, the government concedes number four, maybe based on Rosales Morales or Molina. They don't say why, but that's off the table. I think prong three is off the table because you've identified the range that's in play. You're making a decent case, I think, that there might be an error here, actually. But, you know, plainness has to be clear or obvious. And just, you know, sharpen why you think it's clear or obvious because, you know, it feels like taxes that weren't paid. It feels like FICA taxes that weren't paid. There were objections at some point in time to doing everything under 2T1.1. That got corrected. You point out in your brief that that was just a, that was cosmetic style correction, minimal cosmetic style correction. But why is it obvious? Like, I just, it is, are you going to just echo in any, any plain text misreading as obvious? I think this court's precedent does say that clearly it's language in Evans and your honor's language in Scott is when there's clearly erroneous statutory interpretation. That is a genre, a familiar genre of plain error. Now everyone, I think, I'm not sure if the government would go this far. I think your honor would go far enough to say the text of 2T1.6 obviously does not reach FICA side employer taxes because we have a 50-year-old Supreme Court precedent slowed out of the United States that says only third-party taxes are collected. So let's turn to the relevant conduct guideline and whether that casts any sort of doubt over that conclusion. And it doesn't because the government, the relevant conduct guideline does not function, has never been thought to function in the way the government contends. You know, there may be a certain intuitive appeal to the idea if you commit a tax offense you're going to be sentenced based on the total amount of taxes that were not paid. That is not what the text of 2T1.6 says. I think we're agreed on that. And that's not what the relevant conduct guideline says. It does say to look at all tax violations committed in the same course of conduct. We're doing that. We're going to look to that full range of tax violations and looking to it we ask what is the total amount of taxes not collected and paid over, replying the text. And everyone agrees that that is 3.3 million dollars. So I think as your honor was explaining before, the relevant conduct rules have enormous significance in federal sentencing and it's kind of ironic to be standing here saying it doesn't matter. My clients are always hammered by the relevant conduct rule. But it doesn't just mean sentence the defendant as harshly as possible, whatever the text of the applicable guideline says. And so when we're faithful to the text of 2T1.6 and when we recognize that the relevant conduct rule doesn't operate in the sort of mop up every wrong way that the government says, I think the error here is clear. So you're saying that the total that should be attributed to Ms. Facundo is how much? 3.3 million dollars, which is the total amount of employment taxes not collected and paid over for the whole period 2009 to 2019. So it's about five times, more than five times the amount charged in the indictment. And that alone increased her sentencing range from 27 to 33 months to 33 to 41 months. When the court then added in another 1.8 million in the employer-side FICA, it became 41 to 51 months, which was the range relied upon on the district court and it's selected a mid-range sentence. So it's, as Judge Phipps said earlier, not much in dispute that, well I'm not sure what the government's position is, but our position is it shouldn't be in dispute what prongs three and four compel here. Thank you. We'll see how we go. Good afternoon, Ms. Geiger. Good afternoon. May it please the court. My name is Eileen Castillo Geiger and I represent the government. Ms. Facundo stole 5.1 million dollars from the IRS. She now wants to be held accountable for only 3.3 million of that sum. The sentencing guidelines were crafted to ensure that doesn't happen. Well, you know, let me just break in. You know, there's a lot of different sections of the IRS code. There's 7201, there's 7202, and there's 7203. And so the only way that you could get to that full, if you wanted to get to that full 5.1 million, you could charge a 7202 crime coupled with a 7203 crime. Maybe you could even, as the tax manual says, lump it all together as 7210 crime. But that's not the array that we have here. The array that we have here is only 7202. And don't you have to show for relevant conduct purposes that the amounts that you're going to add in related to the key phrase in 7202, taxes not collected, accounted for, and paid? No, you don't have to. And that's because section 1B1.3A2 of the guidelines coupled with section 3D1.2D of the guidelines provide that for tax offenses, all closely related conduct comes in. And so significantly, section 3D1.2D of the guidelines specifically references section 2T1.1 and section 2T1.6, that they're to be grouped together. And then section 1B1.3A2 instructs, unless otherwise specified, for offenses of a character for which section 3D1.2D would require grouping, the base offense level shall be determined by all acts and omissions that were part of the same course of conduct or common scheme or plan. So tax offenses specifically are referenced within these two guidelines combined together. And so even though, yes, the employer's share of the FICA taxes could be charged under 7203 or more likely under the felony version of that 7201 tax evasion, the government didn't need to because no court has ever held that the employer's share of FICA taxes doesn't come in as relevant conduct in a section 7202 case. Can you cite some authority for the opposite proposition? Well, there's no authority directly on point. No circuit court or district or beyond in the FICANO case, and there's another case, Shabilsky, where it came up at sentencing. But no circuit court has ever directly grappled with this issue. But courts have consistently held that the total tax loss includes losses stemming from not just uncharged conduct, but even acquitted conduct. And as the district court found in footnote four of its opinion, these cases are instructive as to the interpretation of relevant conduct under section 1B1.3. And those cases are the ones I cited in my brief. Lynch, for example, a tax evasion case under 7202. While the court didn't have occasion to address the precise issue here, it did uphold the inclusion of uncharged and even acquitted conduct. And in that case, that encompassed the employer's share of FICA taxes in calculating the tax loss. The Gricko case, it's another case in the Third Circuit that dealt with conspiracy to defraud the United States tax evasion and making false returns. And the Third Circuit in that case held broadly that for tax offenses, a defendant's base offense level is determined by the tax loss. But of course it said tax loss. Gricko was a 2T1.1 case. So it used tax loss because it was a tax loss case. It wasn't a tax not collected, accounted for, and paid case. And so of course it used the word tax loss. That's the term of art in 2T1.1. It is the term of art, but 2T1.1 actually, that contains specific instructions in Part C of that provision as to how to determine the tax loss for each particular violation. So all of the sections within Part T of Chapter 2 of the guidelines, they're structured similarly to 2T1.6 in the sense that each of them track the language of the statute that they apply to. So for example- But 2T1.6 is very clear. The base offense level corresponds to the tax not collected, accounted for, and paid. So where do we go from there? Well, then we go to Section 1B1.3 of the guidelines. That definition is for the charged conduct similar to the other sections within 2T1. But as Section 1B1.2b of the guidelines, it says, first, after determining the appropriate offense guideline section, determine the applicable guideline range in accordance with Section 1B1.3 relevant conduct. And so then we have to turn to Section 1B1.3 and putting together Section 1B1.3a2 and 3D1.2d. Tax offenses come in broadly as relevant conduct, as long as they're part of the same course of conduct for Common Schema Plan. They have to be part of the same course of conduct for Common Schema Plan. What do we make of the fact that in 2T1.1, there's an application note about total tax loss? There's no such application note in 2T1.6. Right. And so that application note, it really isn't needed. That explains the breadth of relevant conduct in the tax context. In the context of 2T1.1. Well, 2T1.1, because it deals with three different types of tax violations, it's different from 2T1.6, 2T1.4, 2T1.7. It covers different types of tax offenses. So perhaps the Commission felt that it needed to put it in there because it's not just one distinct type of tax offense, but it doesn't conflict in any way with Section 1B1.3a of the guidelines. If anything, it just explains it, and it explains the breadth of it. But we don't need to look at that commentary because Section 1B1.3a2 and 3D1.2 of the guidelines are unambiguous. And based on the rule in the CEER, if there's an unambiguous guideline text, we could just look there, and that's all that needs So let me just share with you, since this is complex, I'll just put a few of my cards on the table. I'll just tell you how I'm thinking about it. You can tell me what's wrong. I think that 2T1.1 uses the phrase tax loss, and I think tax loss is a very big encompassing term. And so when I look at 3D1.2D, and it says, quote, when the offense level is determined largely on the basis of the total amount of harm or loss, dot, dot, dot, end quote, I think to myself, oh my goodness, yeah, that's a natural fit for 2D1, yeah, 2T1.6, because it's tax loss and we're looking at total amount of loss. So yeah, I get that this has natural application, and you might be able to grab a few other things too. But because 3D1.2 is focused on the total amount of loss, and we have 2T1.6 not being the total amount of loss, but a subset of what's lost, the tax not collected or accounted for and paid over, that might be different than the total tax loss. And so if it's not the total tax loss, then should we really be looking at 3D1.2, which says on the basis of the total amount of harm or loss, and 2T1.6 seems to want to look at a subset of it, only the tax is not collected, counted for, and paid. So 2T1.1, even though it does state tax loss, in Part C, the special instructions of that section, that provides, that describes how to define the tax loss. And it says, for example, if the offense involved a failure to file a tax return or willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay. It includes instructions for each type of tax loss, how to define it, and 2T1.6 does the same thing. It includes, it essentially tracks the statutory language, providing how for the charge conduct losses to be determined. But Section 3D1.2, it's specifically referenced in 1B1.3A2 for offenses of a character for which Section 3D1.2D would require grouping. And then 3D1.2, as I mentioned, includes 2T1.6 along with the other offenses. It is one of the offenses of a character for which grouping is required, and it's therefore all acts and omissions that are part of the same course of conduct or common scheme or plan come in as relevant conduct. And here in particular, the employment taxes, it's noteworthy that they always go hand in hand. It's very rare to have a case where an employer pays over, say, the employer's share of the taxes but doesn't pay the employee's taxes. These employment taxes, they are reported on the same tax form. In this case, it was the Form 943. They're actually aggregated together on that form. So generally, when you have one type of violation, you have the other. So it's very clearly, it's relevant conduct. It's the same victim, the IRS, the same purpose behind the scheme, to avoid paying the IRS the money that it owes, the same modus operandi. So here especially, it's Sections 1B1.3A2 and 3D1.2 apply. So it sounds like your argument particularly hinges primarily on whether one agrees that the employer's share here is common course of conduct. Yes. And your best argument for that is because both violations tend to occur concurrently when they occur. That's one of the That's not the only factor. Also, they have the same victim, the same purpose. They stem from the exact same business venture. The offenses are incredibly similar. They're committed in tandem. They're continuous. And so if ever you were to have offenses that were part of the same course of conduct or common scheme or plan, it's the failure to pay over both types of employment taxes. And I also, Your Honors, if I may, as you're aware, the burden is on the defendant to meet every prong of the plain error test. And a new and involved question of law cannot present plain error. As the Court made clear in the Jabotay case, error is plain when it is clear or obvious. And the Court stated in that case, given the novelty of the interpretative question and lack of persuasive, let alone authoritative guidance, plain error is not met. If the legal issue here is complex, then it's not plain error. And no Court has ever endorsed appellant's position and held that Section 2T1.6 is circumscribed to the amount of tax not collected or accounted for and paid over. Are you conceding the other prongs of plain error? No, certainly not. For the third prong of plain error, the defendant also cannot show that it substantial rights. He has to show a reasonable probability that, bet for the error, the outcome of the proceedings would have been different. And as we described in our brief, if the employer's side FICA taxes dropped out under Section 2T1.6, that would then become the relevant conduct for Counts 3 and 6. And the loss would jump to the full amount. And then the applicable guideline range would be under 3D1.3B, the one that produces the highest offense level. That would be 2T1.1. And then based on that, you'd get the exact same offense level, a 24 in this case. And so there's no universe where the employer's share of FICA taxes simply vanish as the appellant seeks to do here. And I also just wanted to note one practical consequence of appellant's reasoning, that one of the purposes behind the guidelines is to ensure consistency across sentences, as your honors are aware. And following the appellant's approach actually undermines that approach. Because, for example, as you noted, the employer's share of the FICA taxes could be charged under Section 7201 for tax evasion. So say one prosecutor made the individual decision to charge it under that. Under the appellant's reasoning, then Section 2T1.1 would apply. And then the employee's share of FICA taxes would at that point come in. Say a different prosecutor opted to charge the same course of conduct as was done here under Section 7202. Based on appellant's theory, now the employer's share of FICA taxes doesn't come in. And so you have the exact same course of conduct, the same crime, then the same conduct that occurred, yet you would have two very divergent sentences. And that would undermine one of the purposes behind the guidelines to encourage consistency, notwithstanding a prosecutor's individual charging decisions. Thank you very much. Thank you very much, your honor. Your honors, I'd like to start off exactly where my friend left off, which I think got things exactly backward. If prosecutors are charging the same offense in different ways, in different not charging things consistently. And what happened in this case was, in fact, lazy charging, for which my colleague was not responsible. But we have, at earlier AUSA, telling Judge Goldberg, oh, don't worry about it. We know this language in the statute doesn't reach employer-side FICA. All right, I admit that. We'll just get it as relevant conduct. So you've got the government feeling safe and secure that it can always just mop up everything in relevant conduct. And it could have here, if it had charged things either under 7201, as the tax manual itself offers as an option, it doesn't even have to be that complicated. It could have charged a failure to file the 943 employment tax form. It could have charged a failure to file the employer taxes. The reason this ended up not being part of relevant conduct is because no crime like it was charged in the indictment. The indictment was simply silent as to this. I shouldn't say silent, literally was not charged as an offense. I think the government took the point that enough is enough. But it wasn't enough for the government to accept 3.3 million. It wanted the whole 5.1 million. And therefore, it ramped up the sentencing range too high. I come back to the opening question Judge Restrepo asked you, which is, what about the grouping in 3D, 1.2D, where you got 2T1 at the same time as you've got 2T1, 1.1 and 1.6 together? I mean, that's kind of tough. Well, I agree that the grouping rule is, you know, gets very confusing here, but it's only coming into play because the government has raised it on prong three, as a supposed alternative way of reaching this case. So we are grouping these offenses, right? And when we group them, there's zero loss on all the other counts. The government still agrees with that, but now it's saying, well, even if there's zero loss, somehow those counts would affect the calculation. But the theory that somehow 3D, 1.2, we'd only get to that if there were actually separate groups. There's all one group here. So I'm a little bit at a loss to understand exactly why 3D, 1.2 is thought to increase the range. Let me go back to plain error and prong two. If there's one thing we can all agree on is this is complicated, right? And there's no precedential authority out there to give Judge Goldberg at the time any point of reference. So how do you overcome prong two of the plain error analysis? Well, because there is precedent. I'd submit SLODOV is precedent. SLODOV construes this word collect. It says that means third party taxes. And it's true, it didn't apply to the guidelines. There's no guidelines precedent. There's no guidelines precedent, but it's the exact same language. The exact same term that the Supreme Court has given an authoritative interpretation is used in the guidelines. So it's true. I would submit, Your Honor, that what we have here is an obscure question. It's obscure. It hasn't come up often. Isn't that complicated? It's not that complicated. No, because collected does have this clear meaning. It just got overlooked. And just because a guideline is obscure, it's not a free pass for an obvious error. Thank you. Thank you very much. Thank you, Your Honor. Thank both counsel for their arguments and their briefs, and we will circle back to you soon.